**FOX ROTHSCHILD LLP**
By:     Ely Goldin, Esq.
          Ernest E. Badway, Esq.
          Edward J. Mullins III, Esq.
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068-1600
(973) 992-4800
egoldin@foxrothschild.com

*Attorneys for Plaintiff*
*Baltic Auto Shipping, Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

| | |
|---|---|
| **BALTIC AUTO SHIPPING, INC.**<br><br>                              Plaintiff,<br><br>v.<br><br>**MICHAEL HITRINOV**<br>  a/k/a MICHAEL KHITRINOV,<br>**EMPIRE UNITED LINES CO., INC.,**<br>**MEDITERRANEAN SHIPPING COMPANY**<br>**(USA), INC.** and<br>**JOHN DOES 1 THROUGH 5**<br><br>                              Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Baltic Auto Shipping, Inc., by and through its undersigned counsel, Fox Rothschild LLP, files this Complaint against the defendants herein and in support of the Complaint avers as follows:

#### THE PARTIES

1.      Plaintiff **Baltic Auto Shipping, Inc.** ("Plaintiff" or "Baltic") is a corporation organized and existing under the laws of Illinois with a principal place of business at 5811 W. 66th Street, Bedford Park, IL  60638.

2.      Defendant **Michael Hitrinov**, a/k/a Michael Khitrinov ("Hitrinov") is an adult individual and is a citizen of the State of New York who maintains a principal place of business at 2303 Coney Island Avenue, Brooklyn, NY 11223.

3.      Defendant **Empire United Lines Co., Inc.** ("Empire") is a closely held corporation organized and existing under the laws of the State of New York with a principal place of business at 2303 Coney Island Avenue, Brooklyn, NY 11223.  Empire also maintains a place of business at 52 Butler Street, in Elizabeth, New Jersey.

4.      Defendant **Mediterranean Shipping Company (USA), Inc.** ("MSC") is, upon information and belief, a New York company with a principal place of business at 420 5th Avenue, 8th Floor, New York, NY 10018.

5.      Defendants **John Doe # 1 through #5** (the "John Doe Defendants"), are persons and/or business entities that aided, abetted and/or participated in the events complained of herein but whose identities are as of yet unknown to Plaintiff.  Plaintiff respectfully reserves the right to amend the caption and identify the John Doe Defendants by name once their identities have been ascertained through discovery.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to Article III, Section 2, U.S. Constitution, and 28 U.S.C. §1331 and §1333 as this matter relates to contracts for the carriage of goods by sea from ports of the United States in foreign trade and thus comes under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §30701, the Shipping Act of 1984, 46 U.S.C. §40101, et. seq., and the court's original jurisdiction in maritime matters.

7.      Subject matter jurisdiction is further premised on complete diversity of citizenship pursuant to 28 U.S.C. §1332, the Plaintiff being a citizen of Illinois, for diversity purposes and the

Defendants being citizens of New York or New Jersey for diversity purposes, and the amount in controversy exceeding $75,000.

8.      This Court has personal jurisdiction over each of the Defendants.  Defendants have conducted business in, and have had continuous and systematic contacts with, the State of New Jersey.  In addition, the claims arise from, inter alia, the shipment of automobiles and/or lease of container space in and/or from the Port of Elizabeth, New Jersey.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this federal judicial district and that a substantial part of the property that is the subject of the action originated in this federal judicial district, and Defendants have sufficient contacts with this federal judicial district such that defendants may be found here.

## OPERATIVE FACTS

10.     Plaintiff Baltic is in the business of exporting used cars from the United States to Europe.  These automobiles are generally purchased by Plaintiff at automobile auctions in the United States and are then shipped from the United States overseas via ocean transport in unimodal containers.

11.     Upon arrival at the port of destination, the exported automobiles are unloaded and stored at the port for pick up by the consignee and/or the intended customer.  Once a customer pays for the automobile, the original title is then shipped to the purchaser by Federal Express and, once confirmation of payment is received, the vehicle is released.

12.     Defendant Hitrinov is the sole owner, shareholder officer and director of Defendant Empire.

13.     Empire is an ocean transportation intermediary operating as a no-vessel-operating common carrier ("NVOCC") and is engaged in the transport of automobiles overseas for other auto and personal shippers.

14.     An NVOCC contracts with its customers as principal, agreeing to transport their goods on a voyage that includes an ocean leg.

15.     Empire, as an NVOCC, buys space on the carrying ship like any other customer, receiving a bill of lading from the owner or charterer of that ship when the goods are loaded on board.

16.     Empire, as an NVOCC, sells bookings on vessels operated by MSC, the ocean carrier. MSC, in turn, provides Empire with a breakdown of all charges, such that Empire may charge the shipper one fixed sum for the entire ocean leg of the transport. Whatever sums are actually charged by MSC to Empire, are included in the fixed sum negotiated by and between Empire and the shipper, in this case, the Plaintiff.  These charges are presented by MSC to Empire in an invoice which remains in Defendant Hitrinov's possession, custody and control.  Said invoice has not been provided to the Plaintiff.

17.     As an NVOCC, Empire is subject to regulation by the Federal Maritime Commission.

18.     Pursuant to rules and regulations promulgated by the Federal Maritime Commission including, without limitation, regulations implementing the Shipping Act of 1984, 46 U.S.C. § 40101, et seq, an NVOCC can only charge a shipper prices disclosed in a published tariff filed with the Federal Maritime Commission.

19.     An exception exists with regard to NVOCCs that have entered into a negotiated rate arrangement ("NRA") with a shipper.

-4-

20.     An NRA is defined as "a written and binding arrangement between a shipper and an eligible NVOCC to provide specific transportation service for a stated cargo quantity, from origin to destination, on and after the receipt of the cargo by the carrier or its agent (or the originating carrier in the case of through transportation).

21.     Defendant Empire never entered into an NRA with Plaintiff and, consequently, the exemption does not apply.

22.     At all times relevant hereto, a master service agreement (the "Service Agreement") existed between Defendant Empire and shipping giant Defendant MSC.

23.     MSC is a Vessel Operating Common Carrier ("VOCC").

24.     Pursuant to the Service Agreement, Empire was able to obtain container space aboard MSC vessels outbound from, inter alia, the Port of Elizabeth on favorable terms.

25.     From approximately November 2007 up through the present, Plaintiff shipped containers with automobiles acquired by Plaintiff on behalf of foreign customers to ports abroad including, without limitation, the port of Klaipeda, Lithuania.  During this time period, Plaintiff shipped thousands of containers through Defendant Empire.

26.     In many cases, arrangements for the export, shipment and delivery of the aforesaid vehicles were made with Defendant Empire's facility in Elizabeth, New Jersey.

27.     The automobiles were shipped pursuant to an agreement between Plaintiff and Empire that Plaintiff would be charged one flat fee per container, inclusive of all freight and charges, which fee was determined by the port of origin and port of destination.  Said agreement was memorialized in tariffs included in spreadsheets provided by Empire to Plaintiff from time to time. See, Exhibit "A".

28.     Upon information and belief, Empire was required by law to create and deliver a Bill of Lading and invoice to Plaintiff with respect to the Oceangoing and non-Oceangoing transport of Plaintiff's vehicles (the "House Bills of Lading" or "HBOLs").

29.     At all times relevant hereto, Empire failed and refused to deliver to Plaintiff's HBOLs and invoices for vehicles shipped overseas.

30.     In or around September 2011, Plaintiff notified Defendants that the business relationship between the parties would be wound down and ultimately discontinued.  At or about the same time, Plaintiff also demanded a copy of all HBOLs and invoices related to containers shipped pursuant to the parties' agreement.

31.     At the time of notification, Plaintiff had shipped approximately 167 containers loaded with automobiles purchased by Plaintiff for export.

32.     Of the 167 containers, approximately 20 containers reached their destination and have been fully paid for by Plaintiff.  A listing of the aforesaid containers is attached herewith as Exhibit "B".

33.     Of the 167 containers, approximately 50 containers have recently arrived at their intended destination and have not yet been fully paid.  A listing of the aforesaid containers is attached herewith as Exhibit "C".

34.     The remaining containers remain in transit and payment on said containers is due upon their arrival at the destination port.  A listing of the aforesaid containers is attached herewith as Exhibit "D".

35.     The containers (both arrived and in transit) contain automobiles purchased by Plaintiff and destined for foreign customers at various foreign ports of call including, without

limitation, the port of Klaipeda, Lithuania.  Said containers consist of approximately 676 used automobiles valued in excess of $5,000,000.

36.     In the course of Plaintiff's business relationship with Defendant Empire, Defendant Hitrinov would periodically provide Plaintiff with an Excel spreadsheet identifying the containers in transit and verifying that shipping charges had been paid in full.  The last such spreadsheet prior to the outbreak of hostilities was provided on September 9, 2011 and is attached herewith as Exhibit "E".

37.     According to the spreadsheet, as of September 9, 2011, Plaintiff had fully paid all shipping charges presented by Defendant Empire and had a *credit balance* of approximately $625.00.

38.     After Defendants were notified of Plaintiff's intention to wind down its business relationship with Empire, Defendant Empire unilaterally and retroactively increased its shipping charges.

39.     On or about November 14, 2011, Defendant issued a revised spreadsheet.  A true and correct copy of the revised spreadsheet is attached as Exhibit "F".

40.     According to the revised spreadsheet, Defendant Empire demanded that Plaintiff pay an additional sum of approximately $175,000 over and above the shipping charges that had been agreed to by and between the parties and that had been dutifully paid throughout the parties' relationship.

41.     Furthermore, according to the revised spreadsheet, Defendant Empire demanded that Plaintiff pay an additional sum of approximately $78,000 *retroactively* for containers that had long since been shipped, paid for and released.

42.   These charges, which are referred to as the "Extra Charges" consist of: (a) an $8.00 per container charge for port security; (b) an $8.00 per container charge for carrier security; (c) a $25.00 charge for "European Cargo Data Declaration"; (d) a $25.00 "Export Chasis Usage"; (e) a $25.00 "Telex Release Fee"; and (f) a $100.00 "Doc fee".

43.   These charges were, in fact, included in the fixed price paid by the Plaintiff per container and during the four (4) previous years.

44.   At all times relevant hereto, Plaintiff's cargo remained and continues to remain in the possession, custody and control of Defendants Empire and MSC.

45.   Inasmuch as the Extra Charges were already included in the price charged by Defendant Empire, Plaintiff refused to pay.

46.   In response, Defendants Empire and MSC unlawfully seized Plaintiff's containers and refused to release them to their intended recipients despite the fact Plaintiff had lived up to its contractual obligations and despite the fact that as of September 9, 2011, the last statement before the outbreak of hostilities, Plaintiff had a *credit balance*.

47.   Of the 167 containers, approximately 22 have arrived and have been paid for by Plaintiff.  Although full payment was made, Defendants are now refusing to release the fully paid containers unless Plaintiff immediately pays *new* charges.

48.   The remaining 145 containers are either in transit and/or have arrived at their intended destination port.  However, Defendants have indicated that these containers will not be released until and unless Plaintiff pays the *new* charges which were imposed, for the first time, on November 14, 2011 and which were applied retroactively to containers shipped and released as far back as June, 2011.

49.    Plaintiff made demand upon Defendants for the immediate release of containers, which demand was refused by Defendants.  See, Exhibit "G".

50.    In response to the demand, Defendants have taken it upon themselves to contact Plaintiff's customers, the intended recipients of the aforementioned containers, and have offered them the goods shipped by Plaintiff at a radical discount, with the expectation that any money paid by the customers will then be seized and applied by Defendants.  See, Exhibit "H".

51.    In short, Defendants are illegally and unlawfully holding Plaintiff's cargo hostage in exchange for a payment of an artificial and unlawful debt conjured up by Defendants only after Plaintiff decided to sever its business relationship and applied retroactively as to cargo that has long since been shipped and released.

52.    This is not the first time that these defendants have attempted to engage in fraud.

53.    On August 1, 2002, the Federal Maritime Commission published an Order of Investigation and Hearing alleging that Empire knowingly and willfully provided false information on its bills of lading that enabled Empire to collect unwarranted compensation from ocean carriers. A true and correct copy of the Order of Investigation is attached as Exhibit "I".

54.    The Order of Investigation resulted in formal notification published in the Federal Register under 67 FR 53353 (2002).  See, Exhibit "J".

55.    The investigation resulted in settlement pursuant to which Empire paid a $40,000 civil penalty to the Federal Maritime Commission.  See, Exhibit "K".

56.    In addition, Empire has been sued on numerous occasions by customers alleging fraud in the company's business practices. See, e.g. *OOO "Garant-S" v. Empire United Co., Inc.*, et al. 11-CV-1324 (E.D.N.Y. 2011) (alleging fraud over "disappearance" of motor vehicles); *Motostrada, LLC v. Hitrinov, et al.* 08-CV-3648 (E.D. Pa. 2008) (alleging fraud and extrajudicial

seizure of automobiles to extract payment of inflated and retroactively imposed storage charges); *Easy Export, Inc. v. Hitrinov, et al.* 09-CV-4714 (E.D.N.Y. 2009) (alleging fraud extrajudicial seizure of automobiles to extract payment for unrelated and disputed debt). True and correct copies of the complaints filed in the aforementioned actions are attached collectively as <u>Exhibit "L"</u>

57.     It is believed and therefore averred that Defendants are scam artists who lure customers into a business relationship on purportedly favorable terms. In the course of the relationship, Defendants, as the shipper, exercise dominion and control of the shipment. At an appropriate time, generally when Defendants notice that the relationship is deteriorating or at some other opportune time, Defendants utilize self-help to orchestrate an extra-judicial seizure of goods and demand ransom under the threat that the seized goods will be sold off without regard for value.

58.     It is believed and therefore averred that Defendants have taken this fundamental business model and have applied it over and over again in an effort to obtain unjust and unlawful compensation. As set forth below, Plaintiff seeks an award of damages in an amount sufficient to stop these defendants, once and for all, from violating Plaintiff's rights and from visiting fraud upon anyone else.

### COUNT I
### PLAINTIFF v. DEFENDANTS EMPIRE AND MSC
### <u>BREACH OF MARITIME CONTRACT</u>

59.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

60.     By reason of the aforesaid, Defendants Empire and MSC breached their contractual obligations to Plaintiff.

61.     Furthermore, the imposition of false and excessive shipping charges, both prospectively and retroactively, and the unlawful seizure of Plaintiff's cargo is a violation of the

Shipping Act of 1984, as amended, as well as rules and regulations promulgated by the Federal Maritime Commission.

62.     As a direct and proximate result of Defendants' unlawful activities, Plaintiff suffered damages and losses in excess of $75,000.

## COUNT II
## PLAINTIFF v. DEFENDANT EMPIRE
## (BREACH OF FIDUCIARY DUTY)

63.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

64.     At all times relevant hereto, an agency relationship existed between Plaintiff and Defendant Empire.

65.     Pursuant to the agency relationship, Defendant Empire owed Plaintiff a duty of loyalty and a duty of the utmost good faith and fair dealing.

66.     By reason of the aforesaid, Defendant Empire breached its fiduciary obligations by, inter alia, converting Plaintiff's assets which were the subject of the agency relationship.

67.     The actions of the defendants are willful, wanton and outrageous and justify the award of punitive damages.

**68.**     Defendant Hitrinov aided and abetted in the aforesaid breach and is therefore jointly and severally liable with Defendant Empire for all harm and damages occasioned by the aforesaid unlawful conduct.

## COUNT III
## PLAINTIFF v. ALL DEFENDANTS
## (CONVERSION)

69.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

70.     By reason of the aforesaid, Defendants Empire, MSC, Hitrinov and the John Doe Defendants have unlawfully and without justification converted Plaintiff's property.

71.     Plaintiff has suffered damage as a result of Defendants' conduct.

72.     Defendants' actions are willful wanton and outrageous and justify the award of punitive damages.

## COUNT IV
## PLAINTIFF v. ALL DEFENDANTS
## (CIVIL CONSPIRACY)

73.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

74.     By reason of the aforesaid, the defendants – consisting of two or more persons – combined and/or agreed with malicious intent to engage in unlawful overt acts and/or achieve objections by unlawful means complained of herein to the great harm and detriment to the Plaintiff.

75.     Plaintiff has suffered damage as a result of Defendants' conduct.

76.     Defendants' actions are willful wanton and outrageous and justify the award of punitive damages.

## COUNT V
## PLAINTIFF v. ALL DEFENDANTS
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

77.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

78.     By reason of the aforesaid, Defendants have intentionally interfered with Plaintiff's relationships with actual and/or prospective customers and have interfered with Plaintiff's ability to lawfully market and sell its inventory in an orderly manner.

79.     Plaintiff has suffered damage as a result of Defendants' conduct.

80.     Defendants' actions are willful wanton and outrageous and justify the award of punitive damages.

## COUNT VI
## PLAINTIFF v. DEFENDANTS HITRINOV AND EMPIRE
## (ACTION TO PIERCE CORPORATE VEIL)

81.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

82.     Plaintiff believes and therefore avers that Defendant Hitrinov was an active participant in a scheme to defraud the Plaintiff.  As an active participant in the conduct complained of herein, the individual defendant is not entitled to the limited liability protections of the corporate form.

83.     In addition, Plaintiff believes and therefore avers that Defendants have misused the corporate form and disregarded corporate formalities to a degree where the distinction between the individual and corporate defendants and the distinction between the corporate defendants inter se has been rendered meaningless, thereby rendering the entities a "sham" for purposes of this action.

## COUNT VII
## PLAINTIFF v. ALL DEFENDANTS
## (INJUNCTIVE RELIEF)

84.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

85.     Plaintiff seeks injunctive relief in the form of an order and/or decree enjoining Defendants from exercising unlawful dominion and control over Plaintiff's goods in transit and interfering with Plaintiff's relationships with its customers.

86.     Defendants' conduct threatens immediate and irreparable harm to Plaintiff's business, reputation and goodwill for which no adequate remedy at law exists.

## COUNT VIII
## PLAINTIFF v. DEFENDANT EMPIRE
## (BREACH OF NON-MARITIME CONTRACT)

87.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

88.     By reason of the aforesaid, Defendant Empire has breached its contract with Plaintiff for the shipment of goods via ocean transit.

89.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant losses in excess of $75,000, the jurisdictional limit under 28 U.S.C. § 1332.

## COUNT IX
## PLAINTIFF v. DEFENDANTS EMPIRE AND HITRINOV
## (FRAUD AND DECEIT)

90.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

91.     By reason of the aforesaid, Defendants, through fraud and deceit, induced Plaintiff into shipping a significant quantity of goods for the purpose of placing Plaintiff in a hopeless position where it would succumb to Defendants' unlawful demands for fear of losing revenues associated with the wrongfully seized cargo.

92.     Plaintiff relied on the false statement and representations made by Defendants in connection with its business decisions.

93.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant losses in excess of $75,000, the jurisdictional limit under 28 U.S.C. § 1332.

## COUNT X
## PLAINTIFF v. DEFENDANTS HITRINOV AND EMPIRE
## (NJ CONSUMER FRAUD ACT)

94.      Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

95.      By reason of the aforesaid, Defendants violated the New Jersey Consumer Fraud Act, ("NJCFA"), N.J.S.A. § 56:8-2, et seq.

96.      As a direct and proximate cause of the foregoing, Plaintiff has suffered significant losses in excess of $75,000, the jurisdictional limit under 28 U.S.C. § 1332.

## COUNT XI
## PLAINTIFF v. DEFENDANTS HITRINOV AND EMPIRE
## (NJ RICO)

97.      Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

98.      By reason of the aforesaid, Defendants violated the New Jersey Racketeer Influenced and Corrupt Organizations Act ("New Jersey RICO"), N.J.S.A. § 2C:41-2(c).

99.      At all times relevant hereto, an enterprise existed consisting of Defendants Empire, Hitrinov, the John Doe Defendants and other un-named parties who voluntarily and/or through coercion aided and abetted Defendants in the unlawful seizure and detention of Plaintiff's cargo and in the fraud and deceit complained of herein.

100.     The enterprise engaged in trade or commerce and its activities affected trade or commerce within the State of New Jersey.

101.     Defendants Empire and Hitrinov were employed by, or associated with the enterprise.

102.     Defendants actively participated in the conduct of the affairs of the enterprise.

103.    Defendants actively participated through a pattern of racketeering activity through fraudulent practices, mail fraud, wire fraud, conversion and/or theft.

## COUNT XII
## PLAINTIFF v. DEFENDANT MSC
## (UNJUST ENRICHMENT)

104.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

105.    Defendants Hitrinov and Empire, with the knowledge and consent of Defendant MSC,  orchestrated an extra-judicial seizure of Plaintiff's cargo without due process of law.

106.    By reason of the extra-judicial seizure, Plaintiff's cargo is now stored in ports including, without limitation, ports owed directly and indirectly by MSC.

107.    By reason of the aforesaid, storage and demurrage charges accrue with regard to Plaintiff's cargo which directly and/or indirectly benefit MSC.

108.    By reason of the aforesaid, and unless equity intervenes, MSC has been and/or will be unjustly enriched to the great harm and detriment of the Plaitniff.

## COUNT XIII
## PLAINTIFF v. DEFENDANT MSC
## (AGENCY / VICARIOUS LIABILITY)

109.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

110.    At all times relevant hereto, Defendants Empire and Hitrinov acted as the actual and/or ostensible agents of MSC with regard to the matters set forth in this Complaint.

111.    At all times relevant hereto, MSC had actual knowledge of Defendant Empire's business practices.

-16-

112.    It is believed and therefore averred that MSC is vicariously liable for all harm caused by Defendants Empire and Hitrinov.

**COUNT XIV**
**PLAINTIFF v. ALL DEFENDANTS**
**(WRONGFUL ARREST/SEIZURE)**

113.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

114.    Defendants, through extrajudicial means, have seized and retained Plaintiff's cargo without due process of law, as collateral for an unlawful and unjust debt.

115.    By reason of the aforesaid, Plaintiff has been unable to discharge its contractual obligations to third party customers.

116.    By reason of the aforesaid, Plaintiff has lost substantial revenue and profits and will lose substantially more revenue and profits in the future due to the irreparable harm caused to Plaintiff's name, goodwill and business reputation.

117.    Said losses were reasonably foreseeable at the time of seizure and exceed $1,000,000.

**COUNT XV**
**PLAINTIFF v. ALL DEFENDANTS**
**(REPLEVIN)**

118.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

119.    By reason of the aforesaid, Plaintiff is entitled to a judgment of replevin as against Defendants.

**RELIEF REQUESTED**

120.    By reason of the aforesaid, Plaintiff, Baltic Auto Shipping, Inc., seeks the following:

        (a)     An award of actual damages in excess of $75,000 as against all Defendants, jointly and severally;

        (b)     An award of punitive damages as against all Defendants jointly and severally;

        (c)     Mandatory attorney's fees and costs under the NJCFA and NJ RICO and any other applicable statute;

        (d)     Treble damages under the NJCFA and NJ RICO and any other applicable statute;

        (e)     Injunctive relief as needed to maintain the status quo and prevent Defendants from undertaking further unlawful and illegal acts;

        (f)     A writ, order, decree and /or judgment of replevin; and

        (g)     Such other relief as may be deemed just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


Respectfully submitted,

**FOX ROTHSCHILD LLP**


       /s/Ely Goldin
Ely Goldin, Esq.
Ernest E. Badway, Esq.
Edward J. Mullins III, Esq.
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068-1600
(973) 992-4800
egoldin@foxrothschild.com

*Attorneys for Plaintiff, Baltic Auto Shipping, Inc.*

Date:  November 23, 2011

## Verification

I, Andrejus Presniakovas, being of full age, hereby certify that I am an officer of Baltic Auto Shipping, Inc., the plaintiff in the foregoing complaint; that the allegations contained in the Complaint are true to the best of my knowledge, information and belief; and, that said Complaint is made in truth and good faith and without collusion for the causes set forth therein. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

11.22.2011
_____
DATE

_A. Presniakovas_
_____
NAME